1   MORGAN, LEWIS & BOCKIUS LLP
    Brian D. Berry, Bar No. 229893
2   brian.berry@morganlewis.com
    J.P. Schreiber, Bar No. 317829
3   jp.schreiber@morganlewis.com
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1596
    Tel:    +1.415.442.1000
5   Fax:    +1.415.442.1001

6   MORGAN, LEWIS & BOCKIUS LLP
    Daniel N. Rojas, Bar No. 326115
7   daniel.rojas@morganlewis.com
    300 South Grand Avenue
8   Twenty-Second Floor
    Los Angeles, CA  90071-3132
9   Tel:    +1.213.612.2500
    Fax:    +1.213.612.2501
10

11  Attorneys for Defendant
    TFORCE FREIGHT, INC. (F/K/A UPS
12  GROUND FREIGHT, INC.)

13                  UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15                       SACRAMENTO DIVISION

16

17  ANDREW D. TAPPIN, individually and on    Case No. 2:22-cv-00188
18  behalf of all others similarly situated,
                                             **DEFENDANT TFORCE
19              Plaintiff,                    FREIGHT, INC.'S NOTICE OF
                                             REMOVAL**
20      vs.
                                             Trial Date:      None Set
21  TFORCE FREIGHT, INC., a                  Complaint Filed: November 24, 2021
    Virginia Corporation; and DOES 1 through 50,
22  Inclusive,

23              Defendant.

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1453, Defendant TForce Freight, Inc. ("TForce Freight" or "Defendant") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Sacramento to the United States District Court for the Eastern District of California. Defendant alleges the following grounds for removal:

## I. <u>INTRODUCTION</u>

1. Removal to this Court is proper under 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the aggregate number of putative class members is 100 or greater, (ii) diversity of citizenship exists between Plaintiff and Defendant, and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453.[1]

## II. <u>PROCEDURAL BACKGROUND</u>

2. On November 24, 2021, Plaintiff Andrew Tappin filed a Complaint initiating this proceeding against Defendant in the Superior Court of the State of California for the County of Sacramento, entitled *Andrew D.Tappin, individually and on behalf of all others similarly situated vs. TForce Freight, Inc., a Virginia Corporation, and DOES 1-50, inclusive*, Case No. 34-2021-00311727.

3. Defendant received service of the Complaint on January 21, 2022. Copies of the Summons and Complaint and all other documents served on Defendant are attached as **Exhibit A**.

4. Tappin's Complaint alleges seven causes of action against Defendant: (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Timely Wages

---

[1] This Notice of Removal relies on the nature and amount of damages that Tappin's Complaint places in controversy. TForce Freight refers to specific damage amounts and cites comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. But TForce Freight maintains that Tappin's claims lack merit and that TForce Freight is not liable to Tappin or any member of the putative class for any amount whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

(Labor Code Section 203); (4) Failure to Provide Accurate Itemized Wages Statements; (5) Failure to Indemnify Necessary Business Expenses; and (6) Violation of Business & Professions Code Section 17200, *et seq*. ("UCL").

**III.    VENUE**

5.    As required by 28 U.S.C. § 1446, this Notice of Removal is filed in the district court of the State in which the action is pending. The state court action was pending in Sacramento County Superior Court, which is located within the boundaries of this Court. Thus, venue is proper in this Court. 28 U.S.C. § 1441(a).

**IV.    REMOVAL IS TIMELY**

6.    As required by 28 U.S.C. § 1446(b), Defendant timely filed this Notice of Removal within 30 days after Defendant was served with a copy of the Summons and Complaint on January 21, 2022. *See* **Exhibit A**.

**V.    CLASS ACTION FAIRNESS ACT JURISDICTION**

**A.    Basis of Original Jurisdiction**

7.    Under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), a district court has jurisdiction over a class action if: (a) there are at least 100 class members in the proposed plaintiff class; (b) any class member (named or not) is a citizen of a different state than any defendant; and (c) the combined claims of all class members exceed $5 million. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

8.    Here, as outlined below, this Court has original jurisdiction over this action pursuant to the CAFA.  As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

**B.    Number of Putative Class Members**

9.    Tappin purports to bring this action on behalf of "[a]ll persons who have been employed by Defendants as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.

3

DEFENDANT'S NOTICE
OF REMOVAL

1   resolution."  Complaint ("Compl."), ¶ 10.[2]  Defendant employed approximately 2,718 non-

2   exempt employees in California between November 24, 2017 and April 26, 2021.  *See*

3   Declaration of Tamiko Moody ("Moody Decl.") ¶ 6.  This easily satisfies the 100-class-member

4   threshold.

5           **C.**     **Diversity of the Parties**

6           10.     The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action

7   because the citizenship of at least one class member is diverse from the citizenship of at least one

8   defendant.  *Id*. at (d)(2)(A).  Tappin, a putative class member, is a citizen of the State of

9   California. Compl., ¶ 6.  Defendant is now, and was at the time this action was commenced, a

10  corporation incorporated under the laws of the State of Virginia with its principal place of

11  business in Virginia.  Moody Decl., ¶¶ 10-11.  Thus, Defendant is a citizen of Virginia.  28

12  U.S.C. § 1332(c); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Citizenship of

13  "Doe" defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(b)(1).

14          **D.**     **Amount in Controversy**

15          11.     Based on the allegations in the Complaint, the alleged amount in controversy

16  easily exceeds Five Million Dollars ($5,000,000), as demonstrated below.

17                  **1.**      **First and Second Causes of Action - Failure to Provide Meal**

18                              **Periods and to Permit Rest Breaks**

19          15.     Tappin asserts putative class claims for meal period and rest break violations,

20  which is alleged to carry a four-year statute of limitations.  Compl., ¶¶ 50, 80 (including meal and

21  rest break claims within four-year UCL claim).  Specifically, Tappin alleges that he and the other

22  putative class members "were regularly required to work shifts in excess of five hours without

23  being provided a lawful meal period and over ten hours in a day in a day without being provided a

24  second lawful meal period as required by law."  Compl., ¶ 29.  Indeed, Tappin alleges that TForce

25  Freight "frequently" failed to provide Tappin and the other putative class members with "timely,

26  legally complaint uninterrupted 30-minute meal periods."  Compl., ¶ 31.  Tappin also alleges that

27

28

---

[2] Tappin also seeks to represent a putative "Meal Period Subclass," a putative "Rest Period Subclass," a putative "Wage Statement Subclass," a putative "Waiting Time Penalty Subclass," and a putative "Unfair Business Practice Subclass." Compl., ¶ 11.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                                    4                          DEFENDANT'S NOTICE
                                                                        OF REMOVAL

1    he and the other putative class members "were systematically not authorized and permitted to

2    take one net ten-minute paid, rest period for every four hours worked or major fraction thereof."

3    Compl., ¶ 37.  He asserts that TForce Freight "frequently" required him and the other putative

4    members to "forego their lawful, paid rest periods."  Compl., ¶ 38.

5        16.    Tappin alleges that he and the putative class members are "entitled to recover one

6    (1) hour of premium pay for each day in which a meal period was not provided." Compl., ¶ 53;

7    Cal. Labor Code § 226.7(b).  Similarly, Tappin alleges that he and the putative class members are

8    "entitled to recover one (1) hour of premium pay for each day in which Defendants failed to

9    provide a rest period to Plaintiff and the Class."  Compl., ¶ 58; Cal. Labor Code § 226.7(b).

10        17.    The Eastern District has regularly found that allegations of meal and rest break

11    violations support an assumption of at least a 20% violation rate or higher when calculating the

12    amount in controversy.  *See, e.g., Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal.

13    2020) (finding 40% violation rate for meal and rest break claims reasonable); *Sanchez v. Abbott*

14    *Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021)

15    (finding 60% violation rate for meal period claim reasonable and noting that "courts in the Ninth

16    Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the

17    plaintiff claims a 'pattern and practice' of violations); *Hender v. Am. Directions Workforce LLC*,

18    No. 219CV01951KJMDMC, 2020 WL 5959908, at *7 (E.D. Cal. Oct. 8, 2020) (finding 20%

19    violation rate for meal and rest break claims reasonable).

20        The complaint pleads a liability period that extends back four years from the filing of the

21    complaint. Compl., ¶¶ 50, 80 (including meal and rest break claims within four-year UCL claim).

22    The average rate of pay for the putative class members was $21.19 per hour during the time

23    period from November 24, 2017 through April 26, 2021.[3] Moody Decl., ¶ 7. During this relevant

24    period of alleged liability, putative class members worked a total of 291,904 weeks.  *Id.* at ¶ 6.

25        18.    Here, using only a 10% violation rate—far lower than the standard 20% violation

26    rate endorsed by the above-referenced Eastern District authority—the meal and rest break claims

27

28

---

[3] April 26, 2021 is the date that Defendant collected the relevant business records used for this removal.  Moody Decl., ¶ 6.  This captures many months fewer that the full liability period, so the actual amount in controversy is even greater than these calculations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                                5                DEFENDANT'S NOTICE
                                                          OF REMOVAL

1    each place **$3,092,722.88** in controversy,[45] for a total of **$6,185,445.76** covering both meal and

2    rest claims.

3            **1.    Third Cause of Action – Failure to Pay Timely Wages (Waiting**

4                   **Time Penalties)**

5            27.    Tappin alleges a claim for waiting time penalties on behalf of himself and the

6    putative class members, based on TForce Freight's alleged failure to pay timely wages upon

7    discharge.  Compl., ¶¶ 59-63.  Claims for waiting time penalties entitle an employee to recover up

8    to 30 days' pay.  Labor Code § 203.  The statute of limitations for this claim for waiting time

9    penalties is three years.  Cal. Civ. Proc. Code § 338(a).

10           28.    Based on TForce Freight's business records, the employment of 860 putative class

11   members was terminated during the applicable statutory period from November 24, 2018 through

12   April 26, 2021, the date TForce Freight collected the records that it is using for this removal.

13   Moody Decl., ¶ 9.  As mentioned previously, the putative class members earned an average

14   hourly rate of $21.19 during the relevant time period.  (*Id*. at ¶ 7).  Thus, according to Tappin's

15   allegations that TForce Freight failed to pay him and the relevant putative class members all their

16   earned wages upon termination, the putative class members would be entitled to recover at least

17   **$4,373,616.00** in waiting time penalties.[6]

18           **2.    Fourth Cause of Action – Failure to Provide Accurate Wage**

19                  **Statements**

20           19.    Tappin alleges that TForce Freight failed to provide accurate wage statements to

21   him and the putative class members, in that TForce Freight allegedly "failed to accurately record

22   all time worked" and "failed to accurately record the meal and rest period premiums owed and all

23   wages owed per pay period."  Compl., ¶ 68-69.  Pursuant to Labor Code Section 226(e), Tappin

24   and the putative class members may recover liquidated damages of fifty (50) dollars for the initial

---

[4] 291,904 (total work weeks for all putative class members) x 5 (days per week) x 0.1 (violation rate) x $21.19 (average wage for putative class members) = **$3,092,722.88**

[5] 291,904 (total work weeks for all putative class members) x 5 (days per week) x 0.1 (violation rate) x $21.19 (average wage for putative class members) = **$3,092,722.88**

[6] 860 relevant putative class members x 30 days x 8 hours x $21.19 average hourly wage = **$4,373,616.00**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                                    6                    DEFENDANT'S NOTICE
                                                                  OF REMOVAL

violation, and one hundred (100) dollars for each subsequent violation, up to a maximum aggregate penalty of four thousand (4,000) dollars per employee.  Compl., ¶ 71; *see also* Labor Code § 226(e).  The statute of limitations for these penalties is one year.  Cal. Civ. Proc. Code § 340(a).

20.    Tappin filed his Complaint on November 24, 2021. The liability period for this claim therefore extends from November 24, 2020 through the present.  Based on a review of Defendant's business records, Defendant issued a total of 34,677 wage statements to 1,547 of the putative class members from November 24, 2020 through April 26, 2021.  Moody Decl., ¶ 8. 1,452 of those employees worked throughout that entire period, and each of those employees therefore had 22 allegedly defective wage statements. The remaining 95 employees had an aggregate total of 1,126 wage statements issued to them during that time period.  *Id*.  Even going by the conservative assumption that only every other wage statement was allegedly defective, the amount in controversy for this claim is at least **$1,614,825.00**.[7]

### 3.    Fifth Cause of Action – Failure to Reimburse for Required Expenses

21.    Tappin alleges that TForce Freight "failed to reimburse Plaintiff and Class Members for business expenses… For instance, Plaintiff and Class Members were required to drive their personal vehicles to different locations during work hours, for work-related purposes." Compl., ¶¶ 41, 74.  Tappin does not provide any qualifier or limitation on this allegation, suggesting that the alleged failure to reimburse occurs daily.  Tappin asserts putative class claims for these violations with a four-year statute of limitations.  Compl., ¶ 80 (including reimbursement claim within four-year UCL claim).

22.    Defendant denies that it owes any such reimbursements to Plaintiff or putative class members.  But for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegation that Defendant owes the reimbursements,.  *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("In determining the amount in controversy, courts first look to the complaint."); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("in

---

[7] [1,452 x (50 + (100 x 21))] + [(95 x $50) + ((1,126-95) x 100)] / 2 = **$1,614,825.00**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                                                7                    DEFENDANT'S NOTICE
OF REMOVAL

1    determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio,*

2    *LLC*, No. CV 11-9183 PSG, 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate

3    inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other

4    papers, not what the defendant will actually owe for the actual number of violations that occurred,

5    if any.") (citations and quotations omitted).

6         23.    California Labor Code section 2802 provides that "[a]n employer shall indemnify

7    his or her employee for all necessary expenditures or losses incurred by the employee in direct

8    consequences of the discharge of his or her duties, or of his or her obedience to the directions of

9    the employer." Cal. Lab. Code § 2802(a). For this provision, "the term 'necessary expenditures

10   or losses' shall include all reasonable costs, including, but limited to attorney's fees incurred by

11   the employee enforcing the rights granted by this section." *Id*. § 2802(c).

12        24.    From November 24, 2017 through April 26, 2021, there were 1,548 non-exempt

13   TForce Freight employees, who worked a  total of 295,424 aggregate workweeks, or 67,991

14   aggregate work months..

15        25.    As Tappin alleges that he and the putative class members "were required to drive

16   their personal vehicles to different locations during work hours, for work-related purposes,"

17   Compl., ¶¶ 41, 74, and suggests that this occurred daily, it is reasonable to assume for purposes of

18   calculating the amount in controversy that each of the putative class members incurred driving-

19   related  expenses of at least five miles per week during the class period.[8] *See, e.g., Adams v. Toys*

20   *'R' Us - Delaware, Inc.*, No. 14-CV-05550-MEJ, 2015 WL 395214, at *4 (N.D. Cal. Jan. 29,

21   2015) (upholding calculation of amount in controversy for reimbursement claim of well over 5

22   miles of vehicle mileage per employee per week); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200,

23   1203 (9th Cir. 2015) (reversing the district court's decision to remand where defendants estimated

24   damages based on the assumption that every putative class member was owed reimbursement);

25   *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:13-cv-09809-SVWPJ, 2015 WL 898512, at *3

26   (C.D., Cal. Mar. 3, 2015) (denying plaintiff's motion to remand where defendants' "calculation of

27

---

28   [8] To the extent Plaintiff contests the rate of violations, he cannot artificially limit the amount in controversy or disavow collection of part of the damages on behalf of absent putative class members. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2012).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                  8            DEFENDANT'S NOTICE
OF REMOVAL

1    the amount in controversy relie[d] on assumed rates of violation" and the "rates are sufficiently

2    supported by [plaintiff's] allegations and Defendants' evidence").

3        26.    Here, even going by a conservative assumption of five miles per week in vehicle

4    mileage expenses, that places at least **$817,331.20**[9] in controversy as to this claim.

5                **4.**      **Attorneys' Fees Further Increase the Amount in**

6                        **Controversy**

7        29.    When an award of attorneys' fees is authorized by statute, the request for

8    attorneys' fees is properly considered in determining the amount in controversy for removal

9    purposes. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018)

10   (holding that "if a plaintiff would be entitled under a contract or statute to future attorney's fees,

11   such fees are at stake in the litigation and should be included in the amount in controversy");

12   *Castro v. ABM Indus., Inc.*, No. 17-CV-3026-YGR, 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19,

13   2017) (finding that "awardable attorney's fees are included in the [amount-in-controversy]

14   calculation").

15       30.    Here, Tappin claims that he is entitled to attorneys' fees under the California

16   Labor Code and Business & Professions Code. Compl., ¶¶ 21 and Prayer for Relief, ¶ 3(c)).

17       31.    The Court may consider all attorneys' fees that at the time of removal can

18   reasonably be anticipated will be incurred over the life of the case. *See Fritsch*, 889 F.3d at 794

19   (holding that "[b]ecause the law entitles [Plaintiff] to an award of attorneys' fees if he is

20   successful, such future attorneys' fees are at stake in the litigation, and must be included in the

21   amount in controversy."); *Goldberg v. CPC Int'l*, 678 F.2d 1365, 1367 (9th Cir. 1982) (finding

22   that "potential attorneys' fees" could be considered for purposes of meeting the amount in

23   controversy requirement); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4

24   (N.D. Cal. 2002) (ruling that "[w]hile an estimate of the amount in controversy must be made

25   based on facts known at the time of removal, that does not imply that items such as future income

26   loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of

---

27

28   [9] 291,904 (total weeks worked by putative class) x 5 (miles per week) x .56 (2021 IRS mileage rate) = **$817,331.20**.  *See* https://www.irs.gov/newsroom/irs-issues-standard-mileage-rates-for-2021.

Case No.               9             DEFENDANT'S NOTICE
OF REMOVAL

1   removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002) (stating that

2   "the measure of fees should be the amount that can reasonably be anticipated at the time of

3   removal, not merely those already incurred" and noting that "attorney's fees cannot be precisely

4   calculated" but making projection of likely fees based on the court's "twenty-plus years'

5   experience" overseeing similar cases).

6        32.    As detailed above, the amount in controversy for just five (5) of Plaintiff's seven

7   (7) claimsis at least $14,868,413.50.  The amount in controversy could be further increased by at

8   least 25% to account for potential attorneys' fees.  Attorneys' fee awards in other employment

9   actions show that attorneys' fees awards in wage-and-hour class actions can often exceed 25% of

10  the underlying amount in controversy.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th

11  Cir. 1998) (holding that the Ninth Circuit "has established 25% of the common fund as a

12  benchmark award for attorney fees"); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No.

13  MDL C-07- 1841 EMC, 2011 WL 3352460, at *10 (N.D. Cal. Aug. 2, 2011) (approving fee

14  award of 25% of the final settlement fund for a wage-and-hour class action and finding that 25%

15  is "at or below the standard range"); *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-CV-00132-

16  LB, 2016 WL 4916955, at *6 (N.D. Cal. Sept. 15, 2016) (approving fee award of 25% of the final

17  settlement fund for a wage-and-hour class action and finding that 25% is the "benchmark"

18  established by the Ninth Circuit).

19       33.    Accordingly, if Tappin is successful in pursing his claims on a class-wide basis,

20  his attorneys' fees in this matter will be at least 25% of the amount placed in controversy through

21  Tappin's claims.  For the purposes of this removal – and although the attorneys' fees may be

22  higher upon consideration of all seven causes of action – Defendant calculates attorneys' fees

23  based on the amount placed into controversy by the five claims, plus the claim for waiting time

24  penalties, included above: (1) Failure to Pay Minimum Wages; (2) Failure to Provide Required

25  Meal Periods; (3) Failure to Provide Rest Periods; (4) Failure to Provide Accurate Itemized

26  Wages Statements; (5) Failure to Reimburse Employees for Required Expenses; and (6) Waiting

27  Time Penalties.

28       34.    Based on a reasonably conservative estimate of $12,991,217.96 in controversy for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

these four claims, attorneys' fees for these claims amount to 25% of $12,991,217.96 or **$3,247,804.49**.

### 5. Summary of Amount in Controversy

35.    As detailed above and summarized in the chart below, the amount placed in controversy by Plaintiff's claims far exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d), even without including potential attorneys' fees or amounts from Plaintiff's other claims.

| Claim | Amount in Controversy |
|---|---|
| Meal Breaks | $3,092,722.88 |
| Rest Breaks | $3,092,722.88 |
| Waiting Time Penalties | $4,373,616.00 |
| Wage Statements | $1,614,825.00 |
| Expense Reimbursement | $817,331.20 |
| **Subtotal** | **$12,991,217.96** |
| 25% Attorneys' Fees | $3,247,804.49 |
| **Total** | **$16,239,022.45** |

## VI.    SATISFACTION OF OTHER PROCEDURAL REQUIREMENTS

### A.    Copies of Process, Pleadings, and Orders

36.    As required by 28 U.S.C. § 1446, Defendant hereby provides this Court with copies of all process, pleadings, and orders received by Defendant in this action, which are attached hereto as **Exhibit A**.  Defendant has not received any pleading, process, or order besides those attached.

### B.    Notice to Plaintiff and State Court

37.    As required by 28 U.S.C. § 1446(d), Defendant will promptly give written notice to Tappin of Defendant's filing of this Notice of Removal, and Defendant will file a copy of the Notice with the clerk of the Sacramento County Superior Court.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.                                          11                          DEFENDANT'S NOTICE
OF REMOVAL

1

**C.**     **Notice of Interested Parties**

2          38.     As required by Rule 7.1, Defendant concurrently filed its Certification of

3    Interested Parties.

4    **VII.    CONCLUSION**

5          39.     Accordingly, Defendant removes the above-entitled action to this Court.

6

7    Dated:     February 18, 2022                    MORGAN, LEWIS & BOCKIUS LLP

8

9                                                   By /s/ Brian D. Berry
                                                    _____
10                                                      Brian D. Berry
                                                        J.P. Schreiber
11                                                      Daniel Rojas

12                                                      Attorneys for Defendant
                                                        TFORCE FREIGHT, INC. (F/K/A UPS
13                                                      GROUND FREIGHT, INC.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

Case No.                                    12              DEFENDANT'S NOTICE
                                                            OF REMOVAL